**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | | |
|---|---|---|
| MICRO FOCUS (US), INC.<br>700 King Farm Blvd. #400<br>Rockville, MD 20850<br><br>Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS, INC.<br>One Express Way, HQ2N03<br>St. Louis, MO 63121<br><br>c/o CSC Lawyers Incorporating Service Co.<br>221 Bolivar Street<br>Jefferson City, MO 65101<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 16-cv-00971 |

## COMPLAINT

Micro Focus (US), Inc. ("Micro Focus"), by its undersigned attorneys, sues Express Scripts, Inc. ("Express Scripts") for damages in an amount to be established at trial and other relief. In support of its claims, Micro Focus states:

### Parties

1. Micro Focus is a Delaware corporation with its principal place of business in Rockville, Maryland.

2. Express Scripts is a Delaware corporation with its principal place of business in Saint Louis, Missouri.

1

3.     Express Scripts is a Fortune 100 company that is in the business of providing pharmacy benefit management services. Express Scripts has over 30,000 employees worldwide.

## Jurisdiction and Venue

4.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1338 (Copyright Act) and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

5.     This Court has personal jurisdiction over Express Scripts because Express Scripts has consented to "the exclusive jurisdiction of the courts of the State of Maryland," under Paragraph 17 of the End User License Agreement ("EULA").

6.     This Court also has personal jurisdiction over Express Scripts because Express Scripts regularly conducts business within the State of Maryland.

7.  Venue is proper under 28 U.S.C. §§ 1391 and 1400.

## Facts Common to All Counts

8.     Micro Focus is a leader in business enterprise computer software, and is a United States subsidiary of Micro Focus International plc, a public corporation based in the United Kingdom. Micro Focus serves thousands of customers worldwide, and has been doing business since the 1970s.

9.     Micro Focus (on its own and/or through its predecessors) has developed and distributed a variety of software products, including the OnWeb/RUMBA suite of products (collectively "RUMBA PRODUCTS"), and continues to develop and distribute various software products.

10.    RUMBA PRODUCTS are "terminal emulation" software. "Terminal emulation" technology replaces the need for classic "dumb terminals." Historically, so-called "dumb terminals" provided a direct connection to host systems, but offered no other functionality. For

example, an older model of a cash register would be considered a "dumb terminal" that allowed only direct payment transactions, while more extensive account management functionality would be handled using a personal computer or mainframe computer.

11. Terminal emulation software renders "dumb terminals" unnecessary by allowing users of devices to access information and applications on a host system from their personal computing devices. For example, RUMBA PRODUCTS allow a licensee's various computing devices to access host applications and perform mission critical functions, such as accessing accounts payable information or medical benefits information.

12. When any customer purchases a license for software from Micro Focus, it is required to click to accept and agree to the terms of a EULA each time it installs any Micro Focus product. The licensee's deployment of the Micro Focus software is subject to the licensee's acceptance of the terms and conditions in the EULA. If the licensee does not click on the "accept" button in the setup, the licensee will not be able to install the software. By clicking the accept button, the licensee acknowledges that it has read the EULA, understands it, and has agreed to be subject to its terms and conditions.

13. Customers do not purchase RUMBA PRODUCTS or other Micro Focus products, but instead may purchase licenses for them. They purchase licenses directly from Micro Focus's sales representative or indirectly through resellers, in both cases paying a fee based upon the type of licenses they have purchased.

14. Micro Focus sells licenses for specific products. For example, if a customer purchases a license for Net Express, it cannot install RUMBA instead (or in addition).

15. Micro Focus also sells the licenses by version. For example, if a customer purchases a license for Micro Focus RUMBA v. 2000, it cannot install Micro Focus RUMBA v. 9.1 instead (or in addition).

16. Micro Focus' RUMBA PRODUCTS are also licensed by type of deployment or installation. For example: RUMBA may be purchased as a Workstation license, which entitles the licensee to install RUMBA on workstation devices only (i.e. desktop computers and laptops; *not* on a server); or, RUMBA may be purchased as a Concurrent license, which permits the licensee to install RUMBA on a server (but *not* separately on workstations).

17. Micro Focus's website and the RUMBA PRODUCTS' license agreement also provide copyright notices.

18. Micro Focus has expended considerable effort and expense in developing and promoting the RUMBA PRODUCTS and other Micro Focus products.

19. As a result of Micro Focus's extensive efforts, the RUMBA PRODUCTS consist of valuable, proprietary products and the software, its structure, sequence, and origin are valuable trade secrets of Micro Focus.

20. RUMBA PRODUCTS contain material wholly original to Micro Focus and consists of copyrightable subject matter under the U.S. Copyright Act of 1976, 17 U.S.C. § 101 *et seq*.

21. Micro Focus owns, among others, the following U.S. Copyright Registrations and applications for the products at issue in this lawsuit:

| Registration/Application No. | Description of Copyrighted Work |
|---|---|
| TX0006203914 | Micro Focus OnWeb Web-to-Host Pro Client v. 5.2 |
| TX0006463007 | Micro Focus OnWeb Web-to-Host Pro Client v. 5.3 |

| Registration/Application No. | Description of Copyrighted Work |
|---|---|
| 1-3260618612 (copyrighted code contained within v. Rumba 6.4, TX0007688153) | Micro Focus OnWeb Web-to-Host Pro Client v. 6.1 |
| 1-3260619026 (copyrighted code contained within v. Rumba 6.4, TX0007688153) | Micro Focus OnWeb Web-to-Host Pro Client v. 6.2 |
| 1-3260619074 | Micro Focus OnWeb Web-to-Host Pro Client v. 6.6 |
| TX0006104445 (copyrighted code contained within v. 7.3) | Micro Focus RUMBA v 7.1 |
| TX0006104445 (copyrighted code contained within v. 7.3) | Micro Focus RUMBA v. 7.2 |
| TX0006466767 (as "Rhumba Office 7.5") | Micro Focus RUMBA v. 7.5 |
| 1-3260668792 | Micro Focus RUMBA v. 8.1 |
| 1-3260668931 | Micro Focus RUMBA v. 9.1 |
| TX0007688153 (copyrighted code contained within v. 6.4) | Micro Focus RUMBA v. 2000 |

22. Express Scripts and its predecessors acquired licenses from Micro Focus by purchasing fixed numbers of licenses for specific versions of specific RUMBA PRODUCTS. Specifically:

   a. 225 Workstation licenses of OnWeb Web-to-Host Pro Client v. 5.30;

   b. 6,043 Workstation licenses of  OnWeb Web-to-Host Pro Client v. 6.10

   c. 3,059 Workstation licenses of RUMBA v. 7.50

   d. 10,000 Workstation licenses of RUMBA+ Desktop, v. 9.30 (*see paragraph 23*)

5

  e. 150 Concurrent licenses of RUMBA Office, v. 9.10

  f. 300 Concurrent licenses of OnWeb Web-to-Host Pro Client v. 6.10

23. Express Scripts purchased its 10,000 RUMBA Workstation licenses in 2010. As stated in Annex 1(b) of the EULA, a Workstation license "gives Licensee the right to install and use one copy of the Licensed Software on one stand-alone workstation." The EULA does not permit workstation licenses to be installed on a server.

24. Express Scripts purchased maintenance for many of its licenses as well. Under the EULA, where the licensee purchases maintenance for any product it licensed from Micro Focus, the licensee was required to purchase the same support services for all of the licensee's licensed copies of the relevant product.

25. At the time Express Scripts installed each copy of the RUMBA PRODUCTS, it was presented with the EULA. A true copy of the EULA in effect for all products at issue in this case for which Express Scripts purchased licenses is attached as Exhibit A to this complaint. Express Scripts, like all customers of Micro Focus products, was required to click to accept and agree to the terms of the EULA each time it installed any Micro Focus product.

26. The EULA limits the scope of Express Scripts's license right for each Micro Focus product. For every product, the licensee acquires "a personal, perpetual, non-transferable, non-sublicensable, and non-exclusive license to use the Licensed Software subject to the terms and conditions set forth in [the EULA]."

27. The EULA prohibits the licensee from "[u]s[ing] the Licensed Software in a manner other than as specifically permitted in the [EULA]."

28. Under the EULA, the licensee is obligated to:

>
> "(i) keep records of and provide the location, model and serial number of any and all machines on which the Licensed Software is installed or from which the Licensed Software is accessed, and the names of and how many users are accessing the Licensed Software,
>
> (ii) implement a reasonable mechanism or process to ensure that Licensee's use of the Licensed Software does not exceed the number of licenses granted,
>
> (iii) take all necessary steps to destroy or erase all Licensed Software codes, programs and other proprietary information before disposing of any media containing the Licensed Software, and
>
> (iv) promptly provide written notice to Licensor if Licensee's usage exceeds the license granted."

29. Under the EULA, when a Licensee "exceeds the license granted, without prejudice to any other rights or remedies Licensor may have, including without limitation injunctive relief, Licensee agrees to pay Licensor the then current license and maintenance fees for the use of the additional licenses." If the licensee "exceeds the license granted by more than five percent (5%), Licensee shall also reimburse Licensor for the reasonable cost of [the] audit in addition to other amounts due."

30. Under the EULA, when a licensee updates to a new version of software, "the license granted to such prior version and/or release shall terminate after a ninety (90) day transition period from such installation and only the license to such updated and/or upgraded Licensed Software shall continue."

31.     Under the EULA, Micro Focus "may terminate the License Agreement and Licensee's license to the Licensed Software immediately by giving Licensee written notice of termination in the event that . . . Licensee breaches any term or condition of [the EULA] . . ."

32.     In 2013, Express Scripts reported to Micro Focus that it had only one group within Citrix that had access to RUMBA, which had only seven users, and seven users was within the scope of the Citrix concurrent license quantity Express Scripts owned at that time. Express Scripts informed Micro Focus that it intended to increase its employees' ability to access RUMBA through Citrix servers. Express Scripts recognized that it would need to purchase different and additional licenses if it provided broader access through Citrix servers. Rather than purchase additional licenses, however, Express Scripts gave over 35,000 people access to numerous RUMBA software products through servers, in addition to the copies it had made on workstations, without purchasing licenses and without informing Micro Focus.

33.     As permitted under the EULA, Micro Focus began an audit of Express Scripts's deployment of its software, including the RUMBA PRODUCTS, in early 2015.

34.     The audit revealed that Express Scripts had configured its systems and devices to allow widespread over-installation and/or over-deployment of, access to, and or/ use of the RUMBA PRODUCTS. Specifically, the audit revealed that Express Scripts had installed each of the following products on Citrix servers: RUMBA v. 7.2, v. 7.5, and v. 2000, and OnWeb v. 5.3 and v. 6.1. Express Scripts confirmed that 35,236 users had the ability to access each of the five programs deployed through Citrix.

35.     Express Scripts implemented no limitations on the number of users who could access the RUMBA PRODUCTS through Citrix at any given time.

36. Express Scripts's deployment of the RUMBA PRODUCTS on Citrix violates the EULA.

37. In addition, the audit found that Express Scripts had deployed the following desktop/laptop installations:

   a. 3 installations of OnWeb Web-to-Host Pro Client v. 5.10

   b. 2,560 installations of OnWeb Web-to-Host Pro Client v. 5.30

   c. 8,072 installations of OnWeb Web-to-Host Pro Client v. 6.10

   d. 10 installations of RUMBA v. 6.0 (a.k.a. RUMBA 2000)

   e. 1 installation of RUMBA v. 7.10

   f. 2,247 installations of RUMBA v. 7.20

   g. 1 installation of RUMBA v. 7.50

   h. 10 installations of RUMBA v. 8.10

   i. 2,041 installations of RUMBA v. 9.10

38. Micro Focus determined that Express Scripts owned sufficient Workstation licenses to support these installations. In particular, the 10,000 Workstation licenses purchased by Express Scripts in 2010 covered many of the desktop/laptop installations.

39. Express Scripts has argued to Micro Focus that its 10,000 licenses purchased in 2010 are either Authorized User licenses, Concurrent licenses or Named User licenses. None of these license types permit installation of the RUMBA PRODUCTS on a desktop or laptop, nor do they allow the unfettered access that Express Scripts provided through servers. If Micro Focus were to accept any of Express Scripts's various positions regarding the 10,000 licenses purchased in 2010 by applying a different license type, Express Scripts would have several thousand unlicensed desktop/laptop installations in addition to Citrix over-deployments.

40. Express Scripts's deployment of the RUMBA PRODUCTS without the proper licenses violates the EULA, and as a result, Express Scripts is required to compensate Micro Focus in the amount of the "then current license and maintenance fees for the use of the additional licenses." Express Scripts refused to remit payment for licenses or maintenance for its additional deployments.

41. Until receiving the audit results, Micro Focus was unaware of Express Scripts's improper actions. At no time prior to the audit did Express Scripts notify Micro Focus regarding actions that failed to comply with the EULA or Micro Focus's intellectual property rights.

42. Express Scripts benefitted from its actions. Among other things, Express Scripts saved the costs of implementing internal controls and tracking and monitoring installations and saved licensing fees by providing access to several RUMBA PRODUCTS to tens of thousands of people and devices for whom Express Scripts had not purchased licenses.

43. Express Scripts's ongoing infringement of Micro Focus's copyrights and ongoing breaches of the EULA have injured and continue to injure Micro Focus.

## COUNT I
### (Copyright Infringement)

44. Micro Focus realleges and incorporates by reference paragraphs 1 through 43 of this complaint as if fully set forth herein.

45. Micro Focus is the owner of the copyrights in and to the RUMBA software, including but not limited to the components of the RUMBA software, and is entitled to bring an action for copyright infringement pursuant to 17 U.S.C. § 101, *et seq.*

46. Express Scripts's installation, copying, and deployment of the RUMBA software exceeded the scope of the EULA and Express Scripts's licenses, and infringes and continues to infringe Micro Focus's exclusive rights granted by 17 U.S.C. § 106.

47. Express Scripts has knowingly, willfully, and deliberately infringed Micro Focus's copyrights in the RUMBA software and continues to do so.

48. Micro Focus has been injured and continues to be injured as a result of Express Scripts's acts of copyright infringement. Micro Focus has been damaged in an amount to be proven at trial. Micro Focus's damages include (i) actual damages and profits that are not attributable to actual damages, or statutory damages, as permitted under 17 U.S.C. § 504; and (ii) full costs and reasonable attorneys' fees under 17 U.S.C. § 505.

49. Micro Focus's remedy at law is not itself adequate to compensate Micro Focus for injuries inflicted and threatened by Express Scripts. Micro Focus is entitled to a preliminary and permanent injunction as permitted by 17 U.S.C. § 502(a).

## COUNT II
### (Breach of Contract)

50. Micro Focus realleges and incorporates by reference paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. The EULA constitutes a valid, enforceable, two-party contract between Micro Focus and Express Scripts.

52. Express Scripts had possession of the RUMBA PRODUCTS, including but not limited to RUMBA v. 7.2, v. 7.5, and v. 2000, and OnWeb v. 5.3 and v. 6.1. The supply of the RUMBA PRODUCTS and the license terms constituted an offer by Micro Focus to sell a license.

53. By its actions, Express Scripts accepted the terms of Micro Focus's offer to sell licenses, creating contracts for which payment was expected.

54. The rights to the RUMBA PRODUCTS are conferred by and controlled by the EULA and such rights are not within the subject matter of the Copyright Act. Micro Focus's

right to enforce its contractual rights is not equivalent to the exclusive rights under the Copyright Act.

55. The EULA was supported by valid consideration, including but not limited to the license fees paid by Express Scripts and the licenses delivered by Micro Focus.

56. Express Scripts has breached the EULA by deploying the RUMBA PRODUCTS in excess of any applicable licenses.

57. Express Scripts has breached and continues to breach the independent covenants in the parties' contracts by refusing to pay Micro Focus the current license fees for the deployment of the additional licenses.

58. Express Scripts has breached and continues to breach the independent covenants in the parties' contracts by refusing to pay Micro Focus the current maintenance fees for the deployment of the additional licenses.

59. Express Scripts has breached and continues to breach the independent covenants in the parties' contracts by failing to implement a reasonable mechanism or process to ensure that Express Scripts's deployment of the Micro Focus software did not exceed the scope of rights provided in the licensing agreements.

60. Express Scripts has breached and continues to breach the independent covenants in the parties' contracts by failing to promptly provide written notice to Micro Focus when Express Scripts exceeded the licenses granted.

61. As a direct and proximate result of these and other express and implied breaches of the contracts, Micro Focus suffered and is continuing to suffer damages, in an amount to be determined at trial.

62. Micro Focus's remedy at law is not itself adequate to compensate Micro Focus for injuries inflicted and threatened by Express Scripts.

## COUNT III
### (Unjust Enrichment)

63. Micro Focus realleges and incorporates by reference paragraphs 1 through 62 of this complaint as if fully set forth herein.

64. Micro Focus conferred benefits upon Express Scripts, namely a limited right to access and copy Micro Focus's software, and Micro Focus's maintenance services.

65. Express Scripts was aware of, and appreciated, these benefits by accessing and copying the RUMBA PRODUCTS, and by benefitting from the maintenance provided in connection with the RUMBA PRODUCTS.

66. Express Scripts's access to and copying of the RUMBA PRODUCTS in excess of the scope of its licenses to these products, and Express Scripts's receipt of the benefit of Micro Focus's maintenance, resulted in an injustice such that it would be inequitable for Express Scripts to retain the benefit of the RUMBA PRODUCTS and the maintenance without the paying of value in return.

67. Express Scripts is obligated to pay to Micro Focus damages for Express Scripts's unjust enrichment by its access to and copying of the RUMBA PRODUCTS. Express Scripts is also obligated to pay Micro Focus damages for Express Scripts's unjust enrichment by its receipt of the benefit of the maintenance.

**REQUEST FOR RELIEF**

WHEREFORE, Micro Focus respectfully requests that the Court:

a. Enter judgment in Micro Focus's favor on all counts;

b. Enter an order terminating the licenses for and requiring Express Scripts to remove all copies of all RUMBA PRODUCTS that Express Scripts over-deployed from its computing system, including but not limited to RUMBA v. 7.2, v. 7.5, and v. 2000, and OnWeb v. 5.3 and v. 6.1, as required under the EULA;

c. Enter an injunction enjoining and restraining Express Scripts, its officers, directors, agents, employees, representatives and all persons acting in concert with them, requiring them to (a) cease providing devices with access to RUMBA PRODUCTS for which Express Scripts failed to provide licenses and (b) cease engaging in further acts constituting breach of contract;

d. Award damages to Micro Focus in an amount to be determined by the Court as required by the EULA;

e. Award damages to Micro Focus for its actual damages resulting from Express Scripts's infringement of Micro Focus's copyrights, including but not limited to fair market value licensing fees, and an award of all profits received, directly or indirectly, by Express Scripts in connection with each infringement pursuant to 17 U.S.C. § 504(b);

f. Award statutory damages in the maximum amount permitted by law pursuant to 17 U.S.C. § 504(c), the EULA, or any other basis permitted by law or the equitable powers of the Court;

g. Award costs and reasonable attorneys' fees to Micro Focus to the extent authorized by statute (including 17 U.S.C. § 505), contract, or equitable grounds;

h.  Award Micro Focus pre- and post-judgment interest to the extent allowed by law;

i.  Grant such other relief as the Court deems appropriate and just.

Dated: April 1, 2016                                        _____/s/_____
                                                            R. James Mitchell, Bar No. 17752
                                                            jamie.mitchell@klgates.com

                                                            Eric C. Rusnak, Bar No. 29027
                                                            eric.rusnak@klgates.com

                                                            K&L Gates LLP
                                                            1601 K Street, NW
                                                            Washington, DC 20006
                                                            Tel. (202) 778-9000
                                                            Fax. (202) 778-9100